SENTELLE, Senior Circuit Judge,
dissenting in part and concurring in part:
I will not reiterate the facts in this controversy, as the careful opinion of the majority sets them forth in necessary detail and with inerrant accuracy. Further, I fully concur in the majority’s discussion and conclusion concerning the issues related to the commercial activity exception set forth in 28 U.S.C. § 1605(a)(2). However, despite my general agreement with the majority’s exposition of the facts underlying the claim for expropriation, I dissent from the conclusion that those facts bring this case within the expropriation exception set forth in 28 U.S.C. § 1605(a)(3).
As the majority recognizes, the Foreign Sovereign Immunities Act (“FSIA”), 28 U.S.C. § 1604, et. seg., “ ‘establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state.’ ” Maj. Op. at 811 (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)). As the majority further recognizes, “[t]he Act provides that ‘a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States.’ ” Maj. Op. at 811 (emphasis in original) (quoting 28 U.S.C. § 1604). Therefore, unless the expropriation claim falls within one of the exceptions set forth in 28 U.S.C. §§ 1605-07, the district court, and derivatively this court, has no jurisdiction over the claim.' The majority concludes that claim falls within the exception created by § 1605(a)(3). I disagree.
That exception permits the courts of the United States to exercise jurisdiction “in any case ... in which rights in property taken in violation of international laiv are in issue.” § 1605(a)(3) (emphasis added). The majority states, Venezuela argues that “as a Venezuelan national, H & P-V may not claim a taking in violation of international law.” Maj. Op. at 811 (emphasis in original). Further, “under generally applicable corporate law principles, H & P-IDC has no ‘rights in property’ belonging to its subsidiary and thus lacks standing,” to bring this action. Maj. Op. at 811. I again look to the majority’s statement of the facts which acknowledges: “All [parties] agree that for purposes of international law, ‘a corporation has the nationality of the state under the laws of which the corporation is organized.’ ” Maj. Op. at 812 (quoting Restatement (Third) of Foreign Relations Law § 213 (1987)).
The majority further recognizes “that generally, a foreign sovereign’s expropriation of its own national’s property does not violate international law.” Maj. Op. at 812 (citing United States v. Belmont, 301 U.S. 324, 332, 57 S.Ct. 758, 81 L.Ed. 1134 (1937)). This principle is known as the domestic takings rule, which provides that *820 “[w]hat another country has done in the way of taking over property of its nationals, and especially of its corporations, is not a matter for judicial consideration here. Such nationals must look to their own government for any redress to which they may be entitled.” Belmont, 301 U.S. at 332, 57 S.Ct. 758.
Like the majority, I recognize that Venezuela’s position in this litigation is that
the domestic takings rule ends this case because H & P-V, as a Venezuelan national, may not seek redress in an American court for wrongs suffered in .its home country. This argument has a good deal of appeal. Having freely chosen to incorporate under Venezuelan law, H & P-V operated in that country for many years and reaped the benefits of its choice, including several extremely lucrative contracts with the Venezuelan government. Given this, and especially given that H & P-V expressly agreed that these contracts would be governed by Venezuelan law in Venezuelan courts, one might conclude that H & P-V should live with the consequences of its bargain.
Maj. Op. at 812. Unlike the majority, I believe that Venezuela’s position is well taken. When appellees chose to incorporate under Venezuelan law, they bargained for treatment under Venezuelan law. To extend our examination of Venezuelan, law to adjudicate its fairness appears to me to. violate Venezuela’s sovereignty, the value protected by the FSIA.
The majority supports its extended examination with the decision in Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845, 861 (2d Cir.1962). While that case may stand for the proposition that the courts of the United States can examine the fairness of a foreign sovereign’s expropriation, I cannot join the majority’s conclusion that “Sabbatino remains good law.” Maj. Op. at 813. Perhaps Sabbatino is good law in the Second Circuit, but we are not bound by the decisions of other circuits, and I do not conclude that Sabbatino has ever been or remains good law in the District of Columbia Circuit. I would, therefore, conclude that Venezuela’s reliance on the domestic takings rule is well taken and should compel the dismissal of Helmerich & Payne’s expropriation claim for want of jurisdiction.
I would further note that I differ with the majority’s apparent belief that Venezuela’s reliance upon Dole Food Co. v. Patrickson, 538 U.S. 468, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003), is misplaced. See Maj. Op. at 814-15. The majority asserts that “[cjontrary to Venezuela’s assertion, ... Dole Food does not represent a wholesale incorporation of corporate law into the FSIA.” Id. While this may be literally accurate, it is at least equally accurate that neither Dole Food nor any other case constitutes a wholesale rejection of corporate law. As both the majority’s opinion and mine have recognized, shareholders ordinarily have no standing to assert claims on behalf of a corporation for its property.
Neither do I find compelling the majority’s reliance on two cases from this circuit: Agudas Chasidei Chabad of U.S. v. Russian Federation, 528 F.3d 934, 940 (D.C.Cir.2008), and Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1517 (D.C.Cir.1984), cert. granted, judgment vacated on other grounds, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985). Chabad is authority, at most, for the proposition that “[i]n an FSIA case, we will grant a motion to dismiss on the grounds that the plaintiff has failed to plead a ‘taking in violation of international lawf or has no ‘rights in property ... in issue’ only if the claims are ‘wholly insubstantial or frivolous.’ ” Maj. Op. at 812 (quoting Chabad, 528 F.3d at 942) (emphasis in original). *821 As the plaintiff here has, by reason of the domestic takings rule, failed to plead a “taking in violation of international law,” Chabad supports rather than undermines Venezuela’s motion for dismissal. 528 F.3d at 943 (emphasis added). Ramirez warrants no separate discussion.
I would note first that the judgment in Ramirez was vacated by the Supreme Court. Weinberger v. Ramirez de Arellano, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985). As the majority states,
we have held that, “[w]hen the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding ‘continue[s] to have precedential weight, and in the absence of contrary authority, we do not disturb’ it.” United States v. Adewani, 467 F.3d 1340, 1342 (D.C.Cir.2006) (quoting Action Alliance of Senior Citizens of Greater Philadelphia v. Sullivan, 930 F.2d 77, 83 (D.C.Cir.1991)).
Maj. Op. at 815. For what it’s worth, I question whether the language quoted from Adewani and Action Alliance in fact states a holding of this court to the effect that we are bound by the reasoning of vacated opinions. Rather, each instance paraphrases language of Justice Powell quoted in a parenthetical following the quoted language from Action Alliance. Action Alliance parenthetically quoted Justice Powell as stating:
Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, ... the expressions of the court below on the merits, if not reversed, will continue to have precedential weight and, until contrary authority is decided, are likely to be viewed as persuasive authority if not the governing law....
County of Los Angeles v. Davis, 440 U.S. 625, 646 n. 10, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (Powell, J., dissenting) (quoted in Action Alliance, 930 F.2d at 83-84). In other words, the prior reasoning of the court in vacated opinions may be persuasive, even powerfully persuasive, but I question whether it is binding precedent.
Be that as it may, Ramirez is not genuinely on point. Ramirez dealt with the question of whether the shareholders of a corporation ousted by acts of the United States government had a property interest warranting due process protection under the Constitution. The Ramirez Court had no occasion to consider whether the statutory waiver of a foreign government’s sovereign immunity encompasses the sort of second degree property interest protected against invasion by our government under the due process concepts of our Constitution.